40 C.C.P.A. (Patents)

### Application of BENDER et al.

### Patent Appeal No. 5951.

United States Court of Customs and Patent Appeals.
April 15, 1953.

C. G. Stratton, Los Angeles, Cal. (Robert I. Dennison, Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

The application on appeal presents for our consideration alleged inventive means for measuring the alignment and disposition of steerable vehicle wheels whereby camber, caster, and kingpin inclination of such wheels is gauged by a device magnetically attached to the machined end face of the wheel hub.

Camber may be defined as that amount in inches or degrees that each wheel is tilted outward at the top. Caster is the amount in degrees of the backward tilt of the axle and kingpin. Kingpin inclination is the amount in degrees that the tops of the kingpins are inclined toward the center of the vehicle.

Three claims are in issue. Claim 19 is drawn to the wheel testing device per se while the others, claims 13 and 21, have relation to the gauge in combination with the machined face of the hub of a kingpin mounted wheel. Claims 1, 2, 8, 11, 12, 15, 16, 17, and 20 have been allowed by the Patent Office.

The Board of Appeals affirmed the decision of the Primary Examiner in rejecting all the claims on appeal, holding that the reference patents constituting the prior art (Peters—2,292,968, issued August 11, 1942, and Graham—2,308,808, issued January 19, 1943) presented sufficient justification therefor.

Claims 19 and 21 read as follows:

"19. A gauge for reading kingpin inclination as well as the camber and caster of a kingpin-mounted wheel having a hub that is provided with an annular outwardly directed and accurately machined vertical face, said gauge comprising a body provided with kingpin—, camber,— and caster-reading means, and a permanent magnet carried by an end of said body and having a flat and verticle outer face, said face being adapted to magnetically engage said face of a wheel hub to support the gauge in its entirety from the wheel and hold said reading means on the body disposed outwardly of the wheel and readable from a position at the side of the wheel, said face of the magnet being dimensioned to span across at least two spaced portions of the mentioned hub face, whereby the face of the magnet is slidable and rotational relative to the hub face and the gauge is thereby slidably and rotationally mounted on the wheel hub to enable adjustment of said gauge during the readings aforementioned.

"21. The combination with a spindle-mounted wheel having a hub provided with an outer end face that is machined normal to the axis of said spindle, of a wheel-gauging device comprising a gauge-mounting body and a magnet fixedly mounted in said body and having at least one flat end pole face, said latter face magnetically engaging said end face of the wheel hub to secure said gauging device to the wheel and thereby supporting said gauging device in its entirety from the hub."

It is readily observed, therefore, that the principal objective of the present applicants is to provide a device for obtaining readings of the camber, caster, and kingpin inclination of a vehicle wheel. If to mount magnetically such a testing device as the claims discuss on the end face of a wheel hub is patentable, the petitioners should prevail.

The case is free from any dispute between the parties as to legal principles applicable to the controversy. It is primarily a question of fact. During the oral argument, counsel left with the court one of the devices in question.

Before proceeding further, it is well to note, by way of simplification, that the applicants are disclosing a measuring device which is attached by means of a permanent magnet to the end face of a wheel hub, the magnet having a flat surface to accomplish said attachment, and the wheel hub having an accurately machined outer face. The engagement of gauge and wheel hub is a sliding and rotational arangement, enabling adjustment during actual readings.

An exceptionally clear and understandable analysis of the claims in question is found in the respective opinions of the Primary Examiner and the Board of Appeals. It is well to read much of it at this juncture, omitting reference numerals when applicable.

Quoting from the decision of the Primary Examiner, it is said:

"The patent to Peters, Serial No. 2,-292,968, shows a wheel gauge for measuring camber, caster, and kingpin inclination as well as other parts to be measured comprising a projection tube which is mounted on any surface to be tested by permanent magnets. In Figures 21 and 22 Peters shows a modification of this structure which includes two adjustable levels in planes at right angles to each other mounted on the tube. These levels also give an indication of the camber, caster, and kingpin inclination when the gauge is mounted on a vehicle wheel. Peters contemplates applying his gauge magnetically against any part of the vehicle frame whose relative inclination he desires to check, including the wheels, brake drums, and frame.

"The Graham patent, Serial No. 2,-308,808, shows a wheel alignment gauge for measuring camber and caster. Usually the gauge is applied against the steering knuckle assembly, but it may be applied against the wheel hub. As will be shown later this can only be against the machined end face of the hub.

\* \* \* \* \* \*

"Claim 21 is the broadest claim. Applying the Peters patent to this claim it is seen that Peters shows the combination with a spindle mounted wheel having a hub, of a wheel guaging device comprising a gauge-mounting body and magnetic clamps having leveled ends adjustably mounted on body [gauge-mounting body] and having at least one flat end pole face, said latter face magnetically engaging the part to be tested (for instance, the wheel) to secure the gauging device to the wheel and thereby support-ing said gauging device in its entirety from the wheel. The claim distinguishes over Peters taken alone only in the fact that the gauging device is applied against the hub rather than the wheel. The distinction that the magnet is 'in' the gauge-mounting body rather than 'on' it is not considered a patentable distinction. It is the Examiner's position that no invention would be involved in supporting the Peters gauge shown in Figures 21 and 22 from the machined end of the wheel hub rather than the wheel itself, particularly in view of Graham, who applies his gauge against the end of the wheel hub. That Graham applies his gauge to the end of the hub rather than a side thereof is clear \* \* \* [in the Graham patent, the inventor states that 'if camber alone were to be taken it might even be taken from the wheel hub by bringing the contact points there against. Such camber reading however, would be indicated by the caster spirit level 22'.] The camber of a wheel is normally read on a level which lies in a plane perpendicular to the plane of the wheel. If Graham's level 22 is to indicate the camber as he states, his arm 14 must be positioned in a plane perpendicular to the plane of the wheel and thus the only portion of the hub to which the wheel could be applied would be the end face. As Peters shows that magnetic and mechanical engaging means are equivalents in this art, it is believed he would be entitled to engage his magnetic means against the hub.

"Claim 13 adds to claim 21 the features that the gauge is 'for reading kingpin inclination and camber and caster of the wheel' (the Peters gauge is used to read these characteristics also), that the magnet is a 'permanent' magnet (so are Peters magnets) and also adds the clause 'whereby the gauge is slidingly and rotationally mounted on the wheel to enable adjustment thereof during the readings aforementioned.' This last feature is characteristic of any magnetic mount-

ing having flat engaging surfaces such as elements 31 [magnetic clamping ends leveled substantially parallel with the axis of the tube] of Peters and the Peters gauge would be slidingly and rotationally mounted on any object to which it is applied, if it also has a flat surface such as contemplated by Peters. Thus claim 13 is considered to be met by the combination of Peters and Graham as applied against claim 21.

\* \* \* \* \* \*

"Claim 19 adds to claim 13 the features that the gauge body is supplied with 'kingpin—, camber—, and caster-reading means' (Peters' levels 44 and 45 constitute such means), that the magnet has a 'vertical' outer face (see leveled surfaces 31 of Peters), that the gauge is 'disposed outwardly of the wheel and readable from a position at the side of the wheel' (so is the Peters gauge) and that the 'face of the magnet is dimensioned to span across at least two spaced portions of the hub face' (the Peters magnets 43 have spaced legs, and thus if the Peters gauge were applied against the hub face, the faces of these magnet legs would span across two spaced portions of the hub). Thus claim 19 is not considered to be patentable over the combination of Peters and Graham. It appears to involve only a double or analogous use of an old device.

"Peters does not disclose that his wheel gauge is to be applied to the machined end face of the hub. However Peters discloses, as noted by appellant in his brief, that he may apply his gauge 'against the wheel disc' and that he may also apply his gauge against a 'surface of the part to be tested' as well as against the face of a brake drum. In view of the fact that Graham contemplates applying his gauge against the end of the wheel hub, it is considered that it would be well within the skill of a mechanic to so apply the Peters gauge. Applicant contends that the Graham patent does not teach applying the gauge against the hub end. The Examiner does not agree. Graham definitely discloses that he may bring his contact points 18 [secured to one end of the gauge device] against the wheel hub to measure camber. And as pointed out above only by applying these contact points against the end face of the hub can Graham achieve the result he states he gets. It is not considered that this is the result of 'speculation or guesswork.'

\* \* \* \* \* \*

"From applicant's disclosure it appears that the outer end of the hub of a conventional front wheel is 'in the form of a machined transverse face normal to the spindle axis \* \* \*.' Certainly applicant has not stated in his application that he removes the wheel from the vehicle and machines this surface prior to applying his gauge thereto. If this end face is conventionally machined on the modern automobile wheel prior to assembly, as it appears to be, when Graham applies his gauge to the end face of the hub, he is applying it to the machined end face of the hub and thus the entire combination is shown. Even if it were true that the end face of the hub of the modern automobile is not 'accurately machined', the difference is merely one of degree; it would be clear to a mechanic that a more accurate machining of the surface to which the gauge is to be applied would produce more accurate results. Merely smoothing the end of the wheel hub is not considered to rise to the dignity of invention.

"This is considered particularly so because Peters' magnetic devices are intended to be used only against flat surfaces. The choice of any machined surface against which to place the Peters gauge means would involve perhaps a new and analogous function of the device disclosed which would be within the province of the patentee. \* \* \*"

On appeal, the Board of Appeals said:
"\* \* \* In view of the teaching

by Graham * * *, we do not believe that one skilled in the art would have to call upon his inventive faculties to assist him to modify the Peters device so that it could be magnetically supported on the end face of a wheel-hub, nor to modify the Graham device, in view of the teaching by Peters, so that it could be magnetically supported on the end face of a wheel-hub. It is our conclusion that the subject matter defined in the claims lacks invention over the cited references. The rejection of the claims will be sustained.

"In appraising the claims, we noticed that the alleged combination claim 13 even fails to define a structural co-operative relationship between the wheel-hub face and the gauge. As defined, said elements are not in positive engagement one with the other. In other words the claim merely catalogs two elements described in terms of their individual structure and function.

"We note that appellants, in their reply brief, have challenged the accuracy of the Examiner's statement

" 'These levels [referring to the levels 44 and 45 in Figs. 21 and 22 of the Peters patent] also give an indication of the camber, caster, and king-pin inclination when the gauge is mounted on a vehicle wheel.'
stating that they can find nothing in the Peters disclosure that sanctions such a statement. Attention is directed to the contents in paragraphs 2, 3 and 4, column 2, page 3 of the Peters patent, especially to the last two sentences in paragraph 4 where the patentee states that

" 'In the adjusting of these parts to a proper caster, camber and king pin slant the levels are used on suitable platforms or brackets attached to the parts worked on preferably by magnetic clamps. Thus these approximate adjustments are achieved before the wheel is attached in place.'

"While, as the patentee states, the adjustments made by the levels compared with the projector and screen are only rough or approximate, nevertheless they are adjustments and, as far as we can determine, at the most they differ in degree only from the like adjustments made by appellants with their levels. We believe that the Examiner's statement in question is fully substantiated by the Peters patent disclosure."

The argument is advanced on appeal that the board's view was too limited, that the Graham teachings are too vague, and that Peters is not pertinent.

We find no difficulty in applying the references to the presented claims and concluding, as did the Patent Office, that one trained and experienced in the art here involved could easily expand the knowledge acquired from the references to encompass the suggestions set forth by the applicants without being entitled to a patent therefor.

The decision of the Board of Appeals is therefore affirmed.

Affirmed.